**Marilyn AXLER, et al., Plaintiffs,**

**v.**

**SCIENTIFIC ECOLOGY GROUP, INC., et al., Defendants.**

**No. Civ.A. 98–10161–MLW.**

United States District Court,
D. Massachusetts.

Sept. 1, 2000.

Thomas G. Shapiro, Shapiro, Grace & Haber, Boston, MA, for Plaintiffs.

Lisa C. Wood, Edward P. Leibensperger, Dennis J. Block, Cadwalader, Wickersham & Taft, New York City, for Defendants.

## MEMORANDUM AND ORDER

WOLF, District Judge.

Plaintiffs seek to maintain a class action against defendants Scientific Ecology Group, Inc. and H.W. "Bud" Arrowsmith, alleging violations of Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5, and common law fraud. The court denied defendants' motion to dismiss. It ordered that the first phase of discovery focus on defendants' statute of limitations defense in anticipation of a possible motion for summary judgment on this issue. Defendant propounded certain requests for documents and interrogatories to which plaintiffs have objected. Defendants have moved to compel the production of the disputed documents and answers to the disputed interrogatories. For the reasons set forth below, defendants' motion is being allowed in part and denied in part.

Defendants may have a meritorious statute of limitations defense to this action. The current discovery disputes must be decided in the context of the substantive law relating to that issue.

As this court explained in the May 21, 1999 Memorandum and Order, the Supreme Court has stated that "[l]itigation instituted pursuant to § 10(b) and Rule 10b–5 [ ] must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). However, the language in *Lampf* suggesting that a subjective test—looking to when plaintiffs actually discovered a violation—be used to determine the date the limitations period begins has not been interpreted literally. Rather, as the Court of Appeals for the First Circuit has written:

> In securities cases, federal case law permits tolling for fraudulent concealment .... The statute does not begin to run until "the time when plaintiff in the exercise of reasonable diligence discovered or should have discovered the fraud of which he complains." *Cook v. Avien, Inc.,* 573 F.2d 685, 694 (1st Cir.1978). But " 'storm warnings' of the possibility of fraud trigger a plaintiff's duty to investigate in a reasonably diligent manner ... and his cause of action is deemed to accrue on the date when he should have discovered the alleged fraud." *Maggio v. Gerard Freezer & Ice Co.,* 824 F.2d 123, 128 (1st Cir.1987) (emphasis omitted)....

\* \* \* \* \* \*

We need not decide whether the statute of limitations begins to run on the date the storm warnings appear or the later date on which an inquiring investor would through reasonable diligence have discovered the fraud. *Compare, e.g., General Builders [Supply Co. v. River Hill Coal Venture],* 796 F.2d [8,] 13 [(1st Cir.1986)] (suggesting the former), with *Maggio,* 824 F.2d at 129 (suggesting the latter). The time between the two dates in most cases is not likely to be long enough to affect the outcome.

*Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.,* 129 F.3d 222, 224–25 (1st Cir.1997).

As the Court of Appeals for the First Circuit has repeatedly explained, "whether a plaintiff should have discovered the fraud *'is an objective question'* requiring the court to determine if the plaintiff possessed such knowledge as would alert a reasonable investor to the possibility of fraud." *Maggio,* 824 F.2d at 128 (quoting *General Builders Supply Company,* 796 F.2d at 11)(emphasis added). Thus, "[a]ctual notice ... is not the appropriate standard for determining when the statute of limitations begins to run for a 10b–5 claim." *Reisman v. KPMG Peat Marwick LLP,* 965 F.Supp. 165, 170 (D.Mass. 1997).

Plaintiffs allege that after certain adverse information concerning Molten Metal Tech-

nology, Inc. ("Molten Metal") was revealed, they "retained counsel and exercised due diligence in the pursuit of possible claims of fraud with respect to Molten Metal's stock. The investigation by their counsel included a thorough analysis of publicly available information concerning Molten Metal and consultation with experts." Amended Complaint ¶ 93. In answers to interrogatories, each of the plaintiffs asserted that: he or she "did not participate in [any] investigation personally other than engaging counsel;" he or she never gave any consideration to whether claims should be filed against defendants, but rather "relied on the investigation and judgment of ... counsel;" and the facts and information underlying the allegations of the Amended Complaint are in the possession of plaintiffs' counsel. *See* Defs.' Mem. of Law in Supp. of Mot. to Compel Discovery ("Defs.' Mem."), Ex. D. (Answers to Interrogatories Nos. 1(c), (f), and (i); 2(a) and (f); 3(a)).

Accordingly, the efforts undertaken by plaintiffs' counsel, the information they obtained, and the timing of its receipt are critical to the questions of whether plaintiffs, through their agents, exercised due diligence and when they should have discovered the alleged fraud of which they now complain. However, because the test is objective rather subjective, the opinions plaintiffs' counsel actually formed are relevant only as possible evidence of what a reasonable person would have concluded.

Defendants have requested the production of all documents that: were reviewed as part of plaintiffs' counsel's investigation; reflect information they obtained from any expert, consultant, or individual interviewed; or reflect communications with the Tennessee Department of Environment and Conservation. Defs.' Memo, Ex. A (Requests Nos. 2–5, 11, 20–22). They also request all documents that relate to conclusions plaintiffs' counsel drew from their investigation or to the deliberations concerning whether to file the instant action. *Id.* (Requests Nos. 7, 23). Defendants also submitted interrogatories asking plaintiffs to identify the individuals involved in the investigation, including experts and consultants, and to de-

scribe the actions that those individuals took.

Plaintiffs responded that all of the requested information and documents are solely in the possession, custody and control of their attorneys. While their attorneys produced documents obtained from the public record, they refused to provide any other documents or information based upon the attorney-client and work-product privileges, and because, they contend, the information concerning plaintiffs' litigation experts is protected by Fed.R.Civ.P. 26(a)(2) and 26(b)(4)(B).

Defendants subsequently filed their motion to compel, which implicates several principles. First, "[a] party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of her attorney." *Hickman v. Taylor*, 329 U.S. 495, 504, 67 S.Ct. 385, 91 L.Ed. 451 (1947). *See also Gonsalves v. City of New Bedford*, 168 F.R.D. 102, 108 (D.Mass.1996). Rather, "[a] party is charged with knowledge of what its agents know, or what is in records available to it. . . . A party must disclose facts in its attorneys' possession even though these facts have not been transmitted to the party." 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2177 (1994) at 318–19. Similarly, a party must produce otherwise discoverable documents that are in his attorneys' possession, custody or control.

Therefore, because plaintiffs relied completely on their counsel, the defendants are entitled to discovery from plaintiffs' counsel concerning what investigation they conducted, what information they received, and when they received it. *See In re Imperial Corp. of America*, 179 F.R.D. 286, 290 (S.D.Cal.1998) ("party alleging reliance on his attorney's investigation to discover certain causes of action and overcome statute of limitations bar, impliedly waived the attorney-client privilege and work-product protection that might apply regarding the investigations and its findings and conclusions."); *American Standard, Inc. v. Bendix Corp.*, 80 F.R.D. 706, 708 (W.D.Mo.1978) (discovery of what information attorney obtained, and nature and timing of his conclusions discoverable where plaintiff sought to avoid applica-

ble statute of limitations by claiming that he relied on his attorney); *Bird v. Penn Central Co.*, 61 F.R.D. 43, 47 (E.D.Pa.1973) ("Since . . . counsel served as investigators and advisors on the merits of the potential and actual claims . . . and therefore alone could ascertain the justification for a rescission action, discovery of the relevant documents in their possession is essential to the defendants' case."). In essence, the standard for obtaining work-product established by Federal Rule of Civil Procedure 26(b)(3) has been met in the instant case concerning all *factual* information obtained by plaintiffs' counsel prior to the filing of this action, including information obtained from consultants, experts, and other sources.

In reaching this conclusion, the court is satisfied that the requests for documents and information concerning the Q–CEP Facility is "reasonably calculated to lead to the discovery of admissible evidence" and is, therefore, discoverable. Fed.R.Civ.P. 26(b)(1). In addition, the identities of the experts, consultants, and confidential sources who provided information are relevant as those individuals have knowledge concerning the statute of limitations issue and are potential witnesses. Plaintiffs have not shown that justice requires that their identities remain secret. *See* Fed.R.Civ.P. 26(c). Thus, plaintiffs' request that they not be required to identify those individuals is not meritorious.

■ However, plaintiffs are correct in their contention that the defendants are not entitled to discover generally the analysis done or conclusions reached by plaintiffs' counsel. Rule 26(b)(3) admonishes courts ordering the discovery of work-product "to protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Thus, before disclosure of attorneys' *opinion* work-product is ordered a "far stronger showing of necessity and unavailability by other means is required." *Upjohn Co. v. United States*, 449 U.S. 383, 401–02, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). This standard has, at least implicitly, been deemed to have been met in cases comparable to the instant action when plaintiffs have claimed reliance on the

advice of counsel in an effort to defeat a statute of limitations defense. *See In re Imperial Corp. of America, supra*, 179 F.R.D. at 290 (allowing discovery of investigation and conclusions); *American Standard, Inc.*, 80 F.R.D. at 709 (allowing discovery concerning attorneys' conclusion (mental impression) that fraud had occurred).

■ As described earlier, however, for statute of limitations purposes, the relevant question is not the subjective question of when an individual actually discovered the alleged fraud. *Cooperativa*, 129 F.3d at 224–25. Rather, it is an objective question of when the required "storm warnings" appeared or when "an inquiring investor would through reasonable diligence have discovered the fraud." *Id.* As also indicated earlier, plaintiffs' attorneys' actual conclusions are relevant only as evidence of what a reasonable person would have known. The court does not find that the defendants have made the required strong showing for this information generally. Accordingly, the court is not ordering plaintiffs' counsel to disclose all documents and information concerning their mental impressions or conclusions.

■ However, when counsel advised the plaintiffs that they had a cause of action is potentially very significant. If that advice were given long before this case was filed, that fact may be meaningful to the merits of defendants' statute of limitations defense. Plaintiffs' reliance on the advice of counsel on this issue waives any attorney-client privilege that they would otherwise have concerning it. *Conkling v. Turner*, 883 F.2d 431, 434–34 (5th Cir.1989); *In re Imperial*, 179 F.R.D. at 290. Defendants can only obtain this information from plaintiffs, or their counsel. Thus, the court is requiring that plaintiffs' counsel disclose when they first advised their clients that counsel believed plaintiffs had been defrauded.

Accordingly, it is hereby ORDERED that:

1. Defendants' Motion to Compel Discovery (Docket No. 50) is ALLOWED in part and DENIED in part.

2. Plaintiffs shall, by October 2, 2000, produce the responses to interrogatories and

documents required by the analysis in this Memorandum.

3. All discovery concerning the statute of limitations issue shall be completed by January 12, 2001.

4. Defendants shall, by February 2, 2001, either file a motion for summary judgment on the statute of limitations issue or, with plaintiffs, submit a schedule for the further progress of this case.

5. If necessary, plaintiffs shall, by March 2, 2001, respond to the motion for summary judgment.

6. If necessary, a hearing on the motion for summary judgment will be held on March 29, 2001, at 3:00 p.m.